## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

|  |  |
|---|---|
| **KATELYNN MCLIN**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**TWENTY-FIRST JUDICIAL DISTRICT and ROBERT H. MORRISON, III**<br><br>**Defendants.** | **CIVIL NO. 3:21-CV-411-BAJ-RLB** |

### PLAINTIFF'S FIRST AMENDED, RESTATED, AND SUPERSEDING COMPLAINT

Pursuant to Fed. R. Civ. P. 15(a)(1)(B), plaintiff Katelynn McLin hereby amends and restates her complaint as a matter of course,[1] thereby superseding her original complaint, for the purposes of (1) more fully setting forth the facts and circumstances of her causes of action against defendants Twenty-First Judicial District ("21st JDC") and Robert H. Morrison, III,[2] and (2) withdrawing plaintiff's previously asserted cause of action against the 21st JDC for First Amendment retaliation in violation of 42 U.S.C. § 1983,[3] all as alleged below:

### THE PARTIES

1.       Plaintiff is Katelynn McLin, a person of age and majority, who is a citizen of Louisiana and a resident of Livingston Parish.

2.       Defendant is the Twenty-First Judicial District (hereinafter the "21st JDC"), a statutorily

---

[1]  Pursuant to Fed. R. Civ. P. 15(a)(1)(B), a plaintiff may file an amended complaint, if one has not already been filed, as a matter of right within 21 days after (relevant here) a defendant has filed and served a motion to dismiss pursuant to Rule 12(b).  Here, on November 17, 2021, all defendants filed a motion under Federal Rule 12(b) to dismiss all causes of action asserted in Ms. McLin's complaint.  Thus, this amended complaint is timely filed as a matter of right.

[2]  Amended allegations are set out in **bolded text**.

[3]  Plaintiff has, in good-faith, withdrawn this particular cause of action against the 21st JDC based Ms. McLin's understanding of all the facts and circumstances currently available to her.  Should facts necessary to support this cause of action become apparent during the course of discovery, Ms. McLin reserves the right to move the Court for leave to amend and re-assert the cause of action.

created district and political subdivision of Louisiana.

3.    Defendant is Robert H. Morrison, III, solely in his individual capacity, who is a person of age and majority, and who upon information and belief is a citizen of Louisiana and a resident of Livingston Parish.

## JURISDICTION AND VENUE

4.    The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 2000e-2 *et seq*. (Title VII), 42 U.S.C. § 1981 (discrimination in contracts based on race) through 42 U.S.C. § 1983 (violation of constitutional or federal rights under color of law), and the First Amendment of the United States Constitution through Section 1983, as more particularly set-out herein.

5.    The Court has supplemental, subject-matter jurisdiction over Ms. McLin's Louisiana state law claims pursuant to 28 U.S.C. § 1367(a) because the state-law claims are so related to her federal law claims that they form part of the same case or controversy as more particularly set-out herein.

6.    The Court has personal jurisdiction over the Twenty-First Judicial District because it is a statutorily created judicial district and political subdivision of the State of Louisiana present in all material respects within Louisiana.

7.    In the alternative, the Court has personal jurisdiction over the Twenty-First Judicial District because it is a public unincorporated association present in all material respects within Louisiana.

8.    This Court has personal jurisdiction over Robert H. Morrison, III because he is a Louisiana citizen.

9.    Venue for Ms. McLin's Title VII claims are proper in this Court pursuant to 42 U.S.C. § 2000e–5(f)(3) (Title VII's venue provision) because (1) the unlawful employment practices

alleged herein were committed in Louisiana within this judicial (specifically Livingston Parish), (2) Ms. McLin would be employed in this judicial district (same) but for her discriminatory termination, and (3) upon information and belief the employment records relevant to this action are found within this judicial district (same).

10.     Venue for Ms. McLin's Section 1981, First Amendment, Section 1983, and supplemental state-law claims are proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all defendants' unlawful acts, as well as Ms. McLin's resulting injuries and damages, giving rise to this lawsuit occurred within this judicial district (specifically, Livingston Parish) and, accordingly, a substantial part of the events or omissions giving rise to the claims asserted in this lawsuit occurred in this judicial district.

## PROCEDURAL AND STATUTORY REQUIREMENTS

11.     At all relevant times, the 21st JDC employed more than 50 employees.

12.     On or about October 21, 2019, the 21st JDC hired Ms. McLin as a collection's department collector.

**13.     At all relevant times, the 21st JDC was Ms. McLin's employer.**

14.     Ms. McLin had been continuously employed by the 21st JDC from October 21, 2019 until her termination on November 16, 2020.

15.     At the time of her termination, Ms. McLin had been promoted to the position of Hearing Officer's Secretary.

16.     Upon information and belief, the 21st JDC terminated Ms. McLin's employment because of her race; **or**, alternatively, in retaliation for her participation in protected political speech and perceived political activities or associations.

17.     On or about April 14, 2021, within 300 days of her termination and last adverse

employment action, Ms. McLin timely filed an EEOC Charge of Discrimination with the EEOC New Orleans Field Office alleging that the 21st JDC unlawfully discriminated against and terminated Ms. McLin based on her race in violation of Title VII (EEOC Charge No. 461-2021-01277).

18.    On April 20, 2021, the EEOC issued Ms. McLin a Notice of Right to Sue in this matter.

19.    Ms. McLin timely filed this complaint within 90 days of receiving the EEOC's Notice of Right to Sue letter.

**FACTS**

**A.    The Plaintiff — Katelynn McLin**

20.    Katelynn McLin is a 23-year-old, white woman who lives in Denham Springs, Louisiana.

21.    Ms. McLin began her career with the 21st JDC as a collection's department collector on October 21, 2019.

22.    During her employment with the 21st JDC, Ms. McLin never received written or verbal discipline.

23.    Ms. McLin was generally recognized by her supervisor for her excellent work, and was selected for a promotion, given a raise, and given a commendation letter approximately one month prior to her termination.

24.    The 21st JDC terminated Ms. McLin's employment on or about November 16, 2020.

25.    Alternatively, Chief Judge Robert Morrison terminated Ms. McLin's employment on or about November 16, 2020.

26.    Alternatively, Judicial Administrator Sara Brumfield terminated Ms. McLin's employment on or about November 16, 2020.

**B.     The Defendant — the Twenty-First Judicial District**

27.     The Twenty-First Judicial District ("21st JDC") is a statutorily created district, political subdivision, and public employer responsible for judicial administration of Livingston, Tangipahoa, and St. Helena Parishes.

28.     The 21st JDC is a district created by Louisiana statute.  *See* La. Rev. Stat. Ann. § 13:477(21) (providing that "[t]here shall be forty-one judicial districts in the state and each district shall be composed as follows . . . [t]he parishes of Tangipahoa, Livingston, and St. Helena shall compose the Twenty-First District").

29.     The 21st JDC is the governmental unit responsible for carrying out the Louisiana constitutional duties of the Twenty-First Judicial District Court located within the district.  *See* LA. CONST. art. 5 § 1 (providing that "[t]he judicial power is vested in a supreme court, courts of appeal, district courts, and other courts authorized by this Article"); LA. CONST. art. 5 § 14 (providing that "[t]he state shall be divided into judicial districts, each composed of at least one parish and served by at least one district judge"); *and also* LA. CONST. art. 5 § 15 (The judicial districts existing on the effective date of this constitution are retained").

30.     Judicial Districts are expressly recognized as political subdivisions under Louisiana statute. *See* La. Rev. Stat. Ann. § 49:308(A)(7), (F) (providing that "'[p]olitical subdivision' as used in . . . this Section [related to the deposit of tax revenues] means any judicial circuit, **judicial district**, office of public defender within a judicial district . . . or any other unit of local government, including a special district authorized by law to perform governmental functions") (emphasis added).

31.     Judicial Districts are likewise recognized as political subdivisions under the Louisiana constitution.  *See* LA. CONST. art. 6 § 44(2) (providing that "'Political subdivision" means a

parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions") (emphasis added).

32.    Judicial Districts are likewise generally recognized as political subdivisions under Louisiana statute.  *See* La. Rev. Stat. Ann. § 13:5102(B)(1) (providing that "[a]s the term is used in this Part, 'political subdivision' means [a]ny parish, municipality, special district . . . district . . . and other public or governmental body of any kind which is not a state agency") (emphasis added).

33.    Louisiana statute expressly permits any person to sue any political subdivision in tort or contract in that subdivision's own name.  *See* La. Rev. Stat. Ann. § 13:5101(B) (providing that "[t]his Part applies to any suit in contract or for injury to person or property against the state . . . or a political subdivision of the state, as defined herein . . ."); *cf* La. Rev. Stat. Ann. § 13:5107(B) (providing for service of citation and process "[i]n all suits filed against a political subdivision of this state . . .").

34.    In the alternative, the 21st JDC is a public, unincorporated association under Louisiana statute created (whether purposefully or otherwise as a matter of fact) by the elected judges of the 21st JDC for the public, non-profit purpose of efficiently carrying out the judicial responsibilities of the judges, including by employing staff, such as Ms. McLin.  *See* La. Rev. Stat. Ann. § 12:501(5) (providing that "'unincorporated association' means an unincorporated organization, other than one created by a trust, consisting of two or more members joined by mutual consent for a common, nonprofit purpose").

35.    Louisiana statute expressly permits any person to sue an unincorporated association in tort or contract in that association's own name.  *See* La. Rev. Stat. Ann. § 12:506(A) (providing that "[a]n unincorporated association is a legal entity separate from its members for the purposes of

determining and enforcing rights, duties, and liabilities in contract and tort"); *and also See* La. Rev. Stat. Ann. § 12:507 (providing that "[a]n unincorporated association, in its name, may institute, defend, intervene, or participate in a judicial, administrative, or other governmental proceeding").

36.     Whether a political subdivision or an unincorporated association (or both), the chief executive of the 21st JDC is its Chief Judge.

**37.     Whether a political subdivision or an unincorporated association (or both), the elected judges of the 21st JDC, en banc, have the statutory authority to hire "secretarial, clerical, research, administrative, or other personnel as they deem necessary . . . and fix and pay all or any part of the salaries of such personnel out of the monies in the judicial expense fund."  La. Rev. Stat. Ann. § 13:996.7.**

**38.     At all relevant times in this case, the 21st JDC maintained a judicial expense fund pursuant to Louisiana state statute.  La. Rev. Stat. Ann. § 13:996.6.**

**39.     At all relevant times in this case, upon information and belief, the largest source of revenue for the 21st JDC judicial expense fund – and the largest overall source of revenue for the 21st JDC – was the collection of civil and criminal fees and fines paid by litigants and criminal defendants (sources of income that are not derived from the government or treasury of the State of Louisiana).**

**40.     At all relevant times in this case, upon information and belief, the 21st JDC directly paid Ms. McLin's salary or wages from its general operating fund which is predominately funded through its Judicial Expense Fund.**

**41.     Upon information and belief, any money judgement against the 21st JDC would be satisfied from the 21st JDC's general fund and not paid directly by the government or**

treasury of the State of Louisiana.**

**42.    Alternatively, upon information and belief, the ultimate source of revenue from which the 21st JDC would be required to satisfy any money judgment is a question of material fact in this case.**

43.    At the time the 21st JDC terminated Ms. McLin's employment, the Chief Judge of the 21st JDC was the Hon. Robert Morrison, III. ("Chief Judge Morrison").

44.    Whether a political subdivision or an unincorporated association (or both), the 21st JDC expressly holds itself out as a public employer, informing its employees both verbally and in writing through a "21st Judicial District Court Policy and Procedure Manual" (the "Employee Manual") that they are "all employees of the Twenty-First Judicial District Court (hereinafter referred to as '21st JDC' or 'Court[.]'"

45.    The 21st JDC likewise expressly informs its employees through its Employee Manual that "Employees of the 21st Judicial District Court are 'at will' employees."

46.    The 21st JDC, through its Employee Manual, expressly informs its employees that "[t]his means their employment may be terminated by either the Court or the employee at any time, for any reason not prohibited by law."

47.    The 21st JDC likewise maintains an "Equal Employment Opportunity" policy in its own name.

48.    The 21st JDC, through its Employee Manual, expressly informs its employees that, if they are subjected to protected-status discrimination or harassment, "employees are referred to the Equal Employment Opportunity Commission and the Louisiana Commission on Human Rights" to file a Charge of Discrimination (and the Employee Manual provides the address, phone number, fax number, and website for both the EEOC and LCHR).

49.     The 21st JDC, through its Employee Manual, likewise offers its "employees" with "paid vacation" and other benefits.

50.     At all relevant times, upon information and belief, 21st JDC employed more than 50 employees.

51.     Otherwise, the 21st JDC operates three court houses in Livingston, Tangiphaoa, and St. Helena Parishes, respectively.

52.     In this case, the 21st JDC **employed** Ms. McLin **and assigned her** to work out of its courthouse and administrative facilities located in Livingston, Louisiana.

53.     The courthouse in Livingston was the primary location Ms. McLin was employed at and where she performed all of her work-related responsibilities.

54.     Ms. McLin's immediate supervisor was Judicial Administrator Sara Brumfield.

55.     Ms. McLin's ultimate supervisor was Chief Judge Robert Morrison.[4]

56.     Upon information and belief, Chief Judge Morrison was the decision-maker who decided to terminate Ms. McLin's employment from the 21st JDC.

**C.     Ms. McLin Is Praised at a 21st JDC Clerical Staff Luncheon**

57.     On or around November 13, 2020, Ms. McLin attended a Clerical Staff luncheon convened by the 21st JDC management at a restaurant in Hammond, Louisiana.

58.     During the luncheon, Judicial Administrator Sara Brumfield publicly praised Ms. McLin for her work performance.

59.     During the luncheon, Ms. McLin sat next to a colleague with whom she had never spoken, T.D.,[5] who is a black woman.

---

[4] As of the date **the original** complaint **in this matter** was filed, Chief Judge Morrison is retired.  However, in this complaint, and also to avoid confusion, plaintiff refers to Chief Judge Morrison by his retired title as the appropriate honorific.

[5] Plaintiff refers witnesses in this matter who are not alleged decision-makers using only their initials to

60.     During the luncheon, Ms. McLin and T.D. exchanged small talk and both were polite and amicable.

61.     As the luncheon was drawing to a close, Ms. McLin said out loud, "Well, time to go back to LP and deal with the LPians."

62.     Upon information and belief, it is common slang to refer to Livingston Parish as "LP" and to refer to the citizens of Livingston Parish as "LPians".

63.     T.D. asked Ms. McLin, "What do you mean 'LPians?'"

64.     Ms. McLin replied, "You know, LPians, us."

65.     T.D. did not respond and Ms. McLin left to say goodbye to Ms. Brumfield and walked out of the restaurant with a group of coworkers.

66.     At no point was Ms. McLin's use of the terms "LP" and "LPians" objectively or intended to be offensive, racially charged, or antagonistic in any possible sense.

67.     At the time of the exchange or thereafter, T.D. never expressed offense or alarm at Ms. McLin's statements to Ms. McLin.

**D.     T.D. Reports Ms. McLin Because of a Political Facebook Post from Five Months Prior**

68.     At the time, Ms. McLin maintained a Facebook account.

69.     At the time, the 21st JDC did not have any sort of rules or policies restricting employees from engaging in political speech via social media.

70.     At the time, the only 21st JDC policy concerning political speech prohibited employees from publicly endorsing political candidates for office.

71.     In any event, Ms. McLin did not associate herself with her employment with the 21st JDC

---

protect their privacy in this publicly filed document. Plaintiff will supplement with the full name of each witness during discovery.

on her Facebook account.

72.     Ms. McLin was not "friends" with T.D. via Facebook.

73.     Upon information and belief, after her conversation with Ms. McLin, T.D. began searching through Ms. McLin's public posts on her Facebook account.

74.     Upon information and belief, T.D. found a public post made by Ms. McLin almost five months prior to their luncheon, posted on June 1, 2020 (the "Facebook post").

75.     The Facebook post "re-posted" a news article[6] from Tulsa, Oklahoma's newspaper of record, the *Tulsa World*, regarding a motorist on I-244 who drove his vehicle and horse trailer through a blockade of protestors rallying in the wake of George Floyd's murder causing what the *Tulsa World* described as "minor injuries" to two people.

76.     In the Facebook post, Ms. McLin, who herself keeps and trains horses and who drives a Silver Duramax truck and black horse trailer, editorialized the political and news item by writing "All I'm going to say is that Silver Duramax enjoys pulling that black horse trailer at 80mph 😂 #IWillrunYouOver"

77.     In context, Ms. McLin's public Facebook post engaged in political and free expression insofar as Ms. McLin editorialized critique of the protestors' decision to block incoming Interstate traffic, particularly when doing so put the safety of motorists and animals at risk.

**78.     In context, Ms. McLin's public Facebook post expressed her political opinions on issues of public concern, specifically her views on the appropriateness of protestors using particular acts of civil disobedience to raise awareness about issues of criminal justice and policing reform.**

---

[6] The news article may be accessed online here:  https://tulsaworld.com/news/local/pickup-rolls-through-protesters-gathered-on-interstate-244-state-troopers-questioning-driver/article_f6703c70-2c6d-5455-85cb-ea41373fc7e8.html

79.     In context, Ms. McLin's post was otherwise a political comment on a news event of public concern and was not intended as being racially charged, bullying, harassing, in any way a violation of 21st JDC's policies**, or in any way disruptive to the work environment.**

**80.     In fact, Ms. McLin's comments were objectively not racially charged, bullying, harassing, in violation of 21st JDC policies, or in any way actually disruptive to the work environment.**

81.     Rather, in context, Ms. McLin's post critiqued the method by which protestors in Tulsa choose to engage in protest and, insofar as the blockade of a public Interstate is otherwise unlawful, civil disobedience.

82.     When Ms. McLin posted the Facebook post, she acted in her individual capacity, while not at work or during work hours, without identifying herself as an employee of 21st JDC, and while using her personal digital device.

83.     Upon information and belief, T.D. complained about the Facebook post and the use of the term "LPians" to her supervisor, Judge Blair Edwards.

**84.     However, upon information and belief, Ms. McLin's political post did not actually cause any disruption to the work environmental at the 21st JDC except that T.D. complained about it.**

85.     Upon information and belief, Ms. McLin never engaged in any behavior or communication that violated any policy or rule of the 21st JDC.

**E.      The 21st JDC Terminates Ms. McLin's Employment Because of Her Race, Political Speech, and Perceived Political Affiliations**

86.     Upon information and belief, Judge Edwards then brought the complaint to Chief Judge Morrison.

87.     Upon information and belief, Chief Judge Morrison made the ultimate decision to terminate

Ms. McLin's employment based on Ms. McLin's Facebook post.

88.     Upon information and belief, Chief Judge Morrison then ordered Judicial Administrator Brumfield to process Ms. McLin's termination of employment.

89.     On November 16, 2020, Ms. Brumfield summoned Ms. McLin to her office and terminated her.

90.     Ms. Brumfield stated to Ms. McLin: "I hate having to do this" and that she "had no other choice" but to terminate McLin as Brumfield's "hands are tied."

91.     Ms. Brumfield stated to Ms. McLin that she was specifically being terminated "because of what [McLin] said at the staff meeting and the Facebook post."

92.     Ms. McLin then asked Ms. Brumfield if she could speak to Chief Judge Morrison about the issue, and Ms. Brumfield assented.

93.     Ms. McLin walked next door to speak with Chief Judge Morrison in his chambers.

94.     Chief Judge Morrison admitted that his decision to terminate Ms. McLin was based on Ms. McLin's Facebook post and comment to T.D.

95.     Chief Judge Morrison stated to Ms. McLin that "In today's world that we live in, I have no other choice but to terminate you. You need to watch what you say and do."

96.     Ms. McLin understood Chief Judge Morrison's comment to mean that his decision to terminate Ms. McLin was because of her race, the political content of her Facebook post, her use of the word "LPian" in the context of her race and T.D.'s race, and a perception of her political beliefs or political-party affiliation.

97.     Specifically, upon information and belief, based on the context, content, and tone of conversation between Ms. McLin and Chief Judge Morrison and Ms. Brumfield, Chief Judge Morrison terminated Ms. McLin's employment because of her race, and Chief Judge Morrison

would not have terminated Ms. McLin's employment had she not been white.

98.     Meaning, in other words, upon information and belief, that had Ms. McLin used the same word, "LPian," and made the exact same political post via Facebook, but was a person of color, Black, or African American, Chief Judge Morrison would not have terminated her employment.

99.     Alternatively, upon information and belief, based on the context, content, and tone of conversation between Ms. McLin and Chief Judge Morrison and Ms. Brumfield, Chief Judge Morrison terminated Ms. McLin's employment because of her political speech on a matter of public concern, and Chief Judge Morrison would not have terminated Ms. McLin's employment had she not engaged in political speech via Facebook when she made the Facebook post.

100.    Meaning, in other words, upon information and belief, that had Ms. McLin used the same word, "LPian," but had not made the Facebook post, Chief Judge Morrison would not have terminated her employment.

101.    Alternatively, upon information and belief, based on the context, content, and tone of conversation between Ms. McLin and Chief Judge Morrison and Ms. Brumfield, Chief Judge Morrison perceived Ms. McLin as either holding "conservative" political beliefs or otherwise associated with the Republican party or some other conservative political party because of her race and content of her political comment via Facebook.

102.    Upon information and belief, based on the context, content, and tone of conversation between Ms. McLin and Chief Judge Morrison and Ms. Brumfield, Chief Judge Morrison terminated Ms. McLin's employment based on her political activities and perceived association with a conservative or Republican political party, and Chief Judge Morrison would not have terminated Ms. McLin's employment absent her social media political activity and perceived political-party associations.

103.    Meaning, in other words, upon information and belief, that had Ms. McLin engaged in the exact same commentary and political speech, Chief Judge Morrison would not have terminated her employment but-for her perceived association with a conservative or Republican political party.

**F.    The 21st JDC Does Not Discipline Other Employees Who Engage in Other Forms of Political Speech**

104.    Upon information and belief, other 21st JDC employees publicly discuss topics and political issues that concern or adjacent to politics and social justice, and these employees have these discussions both face to face and online.

105.    Upon information and belief, at least some of these other 21st JDC employees are not white and have not been terminated or reprimanded in written or verbal form.

106.    Specifically, upon information and belief, the complainant T.D. (and upon information and belief others) has posted political endorsements online and via Facebook that presumably violate the 21st JDC policy prohibiting such public political endorsements.

107.    Upon information and belief, T.D. (and upon information and belief others) has not been terminated or reprimanded in written or verbal form for these express violations of 21st JDC's social media policies.

**G.    The Twenty-First Judicial District Was Ms. McLin's Employer and Is a Political Subdivision or, alternatively, an Unincorporated Association with the Capacity to Be Sued in This Matter**

108.    The Twenty-First Judicial District ("21st JDC") is a district authorized and created by Louisiana statute.

109.    The 21st JDC is the local governmental unit and political subdivision responsible for discharging the state's judicial power within the district.

**110.    The 21st JDC is not a Louisiana state agency or component thereof.**

111.    Louisiana statute explicitly recognizes all "judicial districts" as political subdivisions.

112.    Louisiana statute otherwise explicitly recognizes all "districts" as political subdivisions.

113.    Louisiana statute otherwise explicitly recognizes all "governmental bod[ies] of any kind which is not a state agency" as a political subdivision.

114.    Alternatively, the 21st JDC **in its capacity as Ms. McLin's employer** is a public, unincorporated association under Louisiana statute created (whether purposefully or otherwise as a matter of fact) by the elected judges of the 21st JDC for the public, non-profit purpose of efficiently carrying out the **administrative and** judicial responsibilities of the judges, including by employing staff, such as Ms. McLin.

115.    Whether a political subdivision, an unincorporated association, or both, Louisiana statute expressly grants the 21st JDC the capacity to sue and be sued in its own name, and Ms. McLin is statutorily authorized to sue the 21st JDC as her former employer in this case.

116.    Whether a political subdivision, an unincorporated association, or both, the chief executive of the 21st JDC who decided to terminate Ms. McLin's employment was Chief Judge Morrison.

**H.    Chief Judge Morrison and Sara Brumfield Acted Purposefully and in the Course and Scope of Their Authority as Ms. McLin's Employment Decision-Makers**

117.    At all times alleged in this case, Chief Judge Morrison purposefully terminated Ms. McLin's employment knowing that, insofar as his decision was motivated and because of Ms. McLin's race**; or alternatively her** political speech**; or alternatively her** perceived political-party affiliation**,** his termination decision was illegal, but Chief Judge Morrison proceeded anyway.

**118.    With specific respect to Ms. McLin's race, upon information and belief Chief Judge Morrison knew that terminating Ms. McLin because of her race was clearly illegal under both federal and state law, but he proceeded anyway.**

**119.    With specific respect to Ms. McLin's political speech, upon information and belief**

**Chief Judge Morrison knew that Ms. McLin's political post did not cause any actual disruption to the work environment, was political in nature on a topic of public concern, was protected speech under the First Amendment of the United States Constitution, and that terminating Ms. McLin under these circumstances was clearly illegal but he proceeded anyway.**

**120.    With specific respect to Ms. McLin's perceived political associations and political activity, upon information and belief Chief Judge Morrison knew that terminating Ms. McLin because of her perceived political associations and political activity was clearly illegal under state law, but he proceeded anyway.**

121.    Chief Judge Morrison terminated Ms. McLin's employment while acting in the course and scope of his role as Ms. McLin's ultimate decision-maker at work and on behalf of her employer, the 21st JDC.  Chief Judge Morrison's decision to terminate Ms. McLin's employment was administrative in nature, not judicial or adjudicatory, and was made by Chief Judge Morrison as Ms. McLin's ultimate employment decision-maker, not as a judicial official discharging his judicial powers.  Accordingly, the 21st JDC is liable for Chief Judge Morrison's termination decision made in the course and scope of his employment duties.

122.    At all times alleged in this case, Judicial Administrator Sara Brumfield purposefully effected the termination of Ms. McLin's employment knowing that, insofar Chief Judge Morrison's termination instruction to her was motivated and because of Ms. McLin's race, political speech, **or** perceived political-party affiliation, the termination decision was illegal, but Ms. Brumfield proceeded anyway.

123.    At all times alleged in this case, Ms. Brumfield effected the termination of Ms. McLin's employment while acting in the course and scope of Ms. McLin's decision-maker at work and on

behalf of her employer, the 21st JDC; and, therefore, the 21st JDC is liable for Ms. Brumfield's termination decision.

## I.     The Aftermath

124.    After 21st JDC terminated Ms. McLin, she lost her employment, benefits, and pay.

125.    Due to the global COVID-19 pandemic, Ms. McLin was not able to immediately find re-employment and Ms. McLin's suffered related stress, anxiety, and loss of enjoyment of life.

126.    Because 21st JDC unlawfully terminated Ms. McLin's employment under the pretext that Ms. McLin engaged in inappropriate personal and social media commentary, Ms. McLin perceives that her credibility and professional and personal reputation have been significantly diminished, leading further to Ms. McLin's stress, worry, mental anguish, and loss of enjoyment of life.

127.    Accordingly, specifically because of 21st JDC's unlawful termination decision in this case, Ms. McLin is out significant lost back wages, lost future wages, the value of lost benefits, out-of-pocket expenses, reasonable attorney fees incurred because of defendant's unlawful discrimination, retaliation, and termination, and reasonable litigation costs incurred in this matter.

## CAUSES OF ACTION

### A.     Unlawful Disparate Treatment Discrimination Based on Race under Title VII Against the Twenty-First Judicial District

128.    Ms. McLin states a cause of action for unlawful disparate-treatment discrimination based on her race (white), against the Twenty-First Judicial District under Title VII.

129.    Pursuant to Title VII of the Civil Rights Act of 1964 (as amended), an employer may not discriminate against any "individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. §2000e-2(a)(1). An "employer," relevant here, is any political subdivision, association, or unincorporated organization. 42 U.S.C. § 2000(e)(a). An employer illegally demotes, terminates, or constructively discharges an

employee based on her race when race is at least one of the factors motivating the adverse action. *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005). In a Title VII action, an employer is vicariously liable for its decision-maker's discriminatory acts when the decision-maker serves as the employer's agent, or when the employer knew or should have known of the decision-maker's discriminatory conduct and took no remedial action. *See e.g.*, *Flanagan v. Aaron E. Henry Cmty. Health Servs. Ctr.*, 876 F.2d 1231, 1235 (5th Cir. 1989).

130.   An employee may prove her prima facie case with either direct or circumstantial evidence. An employee circumstantially proves her prima facie case for race-based discrimination by showing she "(1) is a member of a protected class; (2) was qualified for the position; (3) was subjected to an adverse employment action; and (4) was replaced by someone outside the protected class, or in the case of disparate treatment, shows that other similarly situated employees [not in the protected class] were treated more favorably." *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004).

131.   Here, Ms. McLin realleges and incorporates by reference each and every allegation in the aforementioned paragraphs of this Complaint as if fully set forth herein.

132.   In this case, Ms. McLin was a documented performer who had just received a merit-based raise on October 14, 2020, just one month before her termination on November 16, 2020. Ms. McLin used the word "LPian" during a conversation over lunch with a colleague, T.D., and T.D. then upon information and belief began searching Ms. McLin's Facebook profile. T.D. identified a post from Ms. McLin dated several months prior, on June 1, 2020, wherein Ms. McLin re-posted a news article from the *Tulsa World* reporting on a social justice protest and altercation with a motorist during a blockade of I-244. Ms. McLin publicly editorialized the news article in a way that suggested a critique of the methods used by the protesters to engage in protest and civil

disobedience.  T.D. then brought the Facebook post to Judge Blair Edwards, and Judge Edwards then forwarded the Facebook post to Chief Judge Morrison.  Upon information and belief, Chief Judge Morrison terminated Ms. McLin because of her race in the context of that Facebook post, and instructed Judicial Administrator Sara Brumfield to carry out the termination, which Ms. Brumfield did, upon information and belief understanding that Chief Judge Morrison's decision was motivated by Ms. McLin's race.

133.    Ms. Brumfield summoned Ms. McLin to her office on November 16, 2021.  Ms. Brumfield told Ms. McLin that she was terminated at the direction of Chief Judge Morrison because of the use of the word "LPian" and the Facebook post.  Ms. Brumfield told Ms. McLin "I hate having to do this" but that Ms. Brumfield "had no choice" and her "hands were tied."  Ms. McLin asked to speak with Chief Judge Morrison.  Chief Judge Morrison admitted that he terminated her because of T.D.'s complaint and said "in today's world that we live in, I have no other choice but to terminate you.  You need to watch what you say and do."  Ms. McLin understood this comment, in context, to mean that Chief Judge Morrison did not prefer to terminate Ms. McLin's employment, but felt compelled to do so because of Ms. McLin's race combined with the race of T.D., the content of Ms. McLin's political Facebook post, and the social and political backdrop of the George Floyd protests taking place across Louisiana and the United States.

134.    **In other words,** upon information and belief, had Ms. McLin not been white, Chief Judge Morrison, acting on behalf of the 21st JDC, would not have terminated Ms. McLin under the circumstances of this case.

135.    Accordingly, 21st JDC is liable for all actual and statutory damages suffered by Ms. McLin resulting from her unlawful termination, including, but not limited to, back pay, front pay or reinstatement, statutory damages, compensatory damages, non-compensatory damages, mental

anguish damages, loss of enjoyment of life damages, legal costs, pre-judgment and post-judgment interest, reasonable attorney's fees incurred in this action, and all other appropriate, equitable relief.

**B.      Unlawful Disparate Treatment Discrimination Based on Race under 42 U.S.C. § 1981 through 42 U.S.C. § 1983 against Chief Judge Robert Morrison**

136.    Ms. McLin states a cause of action for unlawful disparate-treatment discrimination based on her race (white) against Chief Judge Robert H. Morrison, III, solely in his individual capacity, under 42 U.S.C. § 1981 through 42 U.S.C. 1983.

137.    Pursuant to Section 1981 of the Civil Rights Act of 1866 (as amended), "all persons in the United States shall have the same contractual rights" and an employer may not discriminate against its employees on the basis of their race. *See LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 (5th Cir. 1996) (citing 42 U.S.C. § 1981(a)).  Section 1981 likewise prohibits discrimination against an employee who is white based on his or her race. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 296 (1976) (so holding).  Whether an employer violates Section 1981 is determined under the same analysis as a Title VII claim.   *LaPierre*, 86 F.3d at 448.  In a Section 1981 action, an employer is vicariously liable for its manager's discriminatory acts when the manager serves as the employer's agent, or when the employer knew or should have known of the manager's discriminatory conduct and took no remedial action. *Arguello v. Conoco, Inc.*, 207 F.3d 803, 807 (5th Cir. 2000).

138.    In the context of public employment, a "claim for damages against a state actor for violation of rights contained in § 1981 must be redressed pursuant to the explicit remedial provisions of § 1983." *Felton v. Polles*, 315 F.3d 470, 482 (5th Cir. 2002) (quoting *Ebrahimi v. City of Huntsville Bd. of Educ.,* 905 F.Supp. 993, 996 (N.D. Ala. 1995)) (overruled on other grounds).  Thus, to establish a claim for intentional employment discrimination under Section 1981

through Section 1983, a plaintiff must additionally show "(1) a deprivation of a right secured by federal law, (2) that occurred under color of state law, and (3) was caused by a state actor." *Givs v. City of Eunice*, 512 F.Supp.2d 522, 542 (W.D. La. 2007), *aff'd* 268 Fed. Appx. 305 (5th Cir. 2008). Likewise, just as in a typical Section 1981 employment discrimination case, a case brought through Section 1983 is "analyzed under the evidentiary framework applicable to claims arising under Title VII." *Id.* A person who violates Section 1981 through Section 1983 is liable for the victim's compensatory damages, non-compensatory damages, punitive damages, attorney's fees, and litigation costs.

139.    Plaintiff hereby incorporates and re-alleges here all prior allegations in this Complaint.

140.    As alleged, herein, Chief Judge Morrison terminated Ms. McLin's employment because of her race. In other words, upon information and belief, had Ms. McLin not been white, Chief Judge Morrison would not have terminated Ms. McLin under the circumstances of this case.

141.    At the time of Ms. McLin's termination, Chief Judge Morrison violated her right to be free from disparate-treatment discrimination based on race in her public employment. At the time of Ms. McLin's termination, that right was clearly established within the United States, the Fifth Circuit, and Louisiana as a matter of law. Chief Judge Morrison's termination of Ms. McLin's employment because of her race was objectively unreasonable as a matter of law. Chief Judge Morrison's termination decision was an administrative act as Ms. McLin's ultimate decision-maker at work, and not a judicial or adjudicatory act.

142.    Accordingly, pursuant to Section 1981 of the Civil Rights Act of 1866 (as amended), through Section 1983, Robert Morrison, solely in his individual capacity, is liable for all actual and statutory damages suffered by Ms. McLin resulting from her unlawful termination, including, but not limited to, back pay, front pay, punitive damages, compensatory damages, non-

compensatory damages, mental anguish and loss of enjoyment of life damages, legal costs, pre-judgment and post-judgment interest, Ms. McLin's reasonable attorney's fees and actual costs incurred in this action, and all other appropriate, equitable relief.

**C.    Unlawful Termination for Political Activity under La. Rev. State. Ann. § 23:961 Against the 21st Judicial District**

143.    Ms. McLin states a cause of action for unlawful termination based on her political activities and affiliations under La. Rev. Stat. Ann. § 23:961 against the Twenty-First Judicial District.

144.    Louisiana statute prohibits any employer with 20 or more employees from making or enforcing any rule or policy "forbidding or preventing any of her employees from engaging or participating in politics[.]"  La. Rev. Stat. Ann. § 23:961.  Section 23:961 likewise forbids any employer from coercing, influencing, or attempting to coerce or influence any employee from participating "in political activities of any nature or character." *Id.*  Section 23:961 likewise forbids any employer from punishing or terminating any employer "should [she] support or become affiliated with any particular political faction or organization[.]" *Id.*  In a civil action, an employee unlawfully terminated because of her political activities or affiliations is entitled to recover "damages from the employer as a result of suffering caused by the employer's violations of [Section 23:9610]." *Id.*

145.    Likewise, under Section 23:961, an employer who terminates an employee for engaging in political activity necessarily "develop[s] a proscribed policy as a result of [the activity]" in violation of the statute.  *Davis v. La. Computing Corp.*, 394 So.2d 678, 679-80 (La. Ct. 4 App. 1981).  Under Section 23:961, an employer's legitimate business justification does not provide an exception to liability.  *Id.*

146.    Plaintiff hereby incorporates and re-alleges here all prior allegations in this Complaint.

147.    In this case, both Judicial Administrator and Chief Judge Morrison admitted to Ms. McLin

that Chief Judge Morrison terminated her employment because of her political Facebook post. Upon information and belief, T.D. reported Ms. McLin because of her political Facebook post. Upon information and belief, even if Ms. McLin had used the word "LPian" with T.D. as alleged during the 21st JDC luncheon, Chief Judge Morrison would not have terminated her employment but-for her political Facebook post.

148.    In the alternative, Chief Judge Morrison's perceived under the circumstances that Ms. McLin was affiliated with a conservative or republican political party or organization, and Chief Judge Morrison terminated Ms. McLin because of that perceived affiliation.

149.    Although Chief Judge Morrison may have believed that his termination decision was a justifiable business decision, Section 23:961 does not permit an employer to terminate an employee merely because the employer asserts the employee's political activities or affiliations might cause an otherwise legitimate detriment to the business. *Davis*, 394 So.2d at 679-80.

150.    Accordingly, pursuant to La. Rev. State. Ann. § 23:961, the 21st JDC is liable for all damages suffered by Ms. McLin resulting from her discriminatory termination, including, but not limited to, lost back wages, lost front wages, compensatory damages, non-compensatory damages, mental anguish damages, loss of enjoyment of life damages, legal costs, pre-judgment and post-judgment interest, and any other relief to which Ms. McLin is entitled.

**D.    Unlawful Termination in Retaliation for Protected Speech under the First Amendment of the United States Constitution through 42 U.S.C. § 1983 against Chief Judge Robert Morrison**

151.    Ms. McLin states a cause of action for unlawful termination in retaliation for her protected political speech against Chief Judge Robert H. Morrison, III, solely in his individual capacity, under the First Amendment of the United States Constitution through 42 U.S.C. 1983.

152.    The First Amendment prohibits a public employer from terminating a public employee for

speaking "on issues of public importance." *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., Illinois*, 391 U.S. 563, 574 (1968). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). **Just this year**, the Supreme Court reiterated the importance of restraining the government from retaliating against Americans engaged in political and otherwise protected speech, especially speech that is regarded as unpopular:

> Our representative democracy only works if we protect the "marketplace of ideas." This free exchange facilitates an informed public opinion, which, when transmitted to lawmakers, helps produce laws that reflect the People's will. That protection must include the protection of unpopular ideas, for popular ideas have less need for protection. Thus, [government has] a strong interest in ensuring that future generations understand the workings in practice of the well-known aphorism, "I disapprove of what you say, but I will defend to the death your right to say it."

*Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, __ U.S. __; 141 S.Ct. 2038, 2046 (2021).

153.    "To prevail on a § 1983 First Amendment retaliation claim, a public employee must establish the following: (1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3) her interest in commenting on matters of public concern outweighs the employer's interest in promoting efficiency; and (4) her speech motivated the employer's adverse action." *Modica v. Taylor*, 465 F.3d 174, 179–80 (5th Cir. 2006). Nevertheless, under Louisiana state law, no Louisiana employer has any lawful business justification to terminate an employee because of his or her political activities. *Davis*, 394 So.2d at 679-80.

154.    Plaintiff hereby incorporates and re-alleges here all prior allegations in this Complaint.

155.    In this case, as alleged throughout, both Judicial Administrator and Chief Judge Morrison admitted to Ms. McLin that Chief Judge Morrison terminated her employment because of her political Facebook post. Upon information and belief, T.D. reported Ms. McLin because of her

political Facebook post.  Upon information and belief, even if Ms. McLin had used the word "LPian" with T.D. as alleged during the 21st JDC luncheon, Chief Judge Morrison would not have terminated her employment but-for her political Facebook post.  In other words, Chief Judge Morrison terminated Ms. McLin's employment because of her political Facebook post.  Ms. McLin's political Facebook post was made on her own Facebook social media profile.  Ms. McLin did not affiliate herself with the 21st JDC in her political post.  Ms. McLin made the post using her own digital device, upon information and belief while on her own time and not while at work or otherwise working.  Ms. McLin's post was made as a citizen, on a matter of public concern, specifically suggesting a critique of the methods used by protestors while engaging in protest in the wake of Derek Chauvin's murder of George Floyd.  **Upon information and belief, Chief Judge Morrison knew that Ms. McLin's political post did not actually cause any disruption to the work environment.**  Regardless, under Louisiana state law, the 21st JDC had no legitimate business interest sufficient to terminate Ms. McLin because of her political activities as a matter of law.  *See Davis*, 394 So.2d at 679-80 (so holding under La. Rev. Stat. Ann. § 23:961).

156.    **Upon information and belief, Chief Judge Morrison specifically terminated Ms. McLin because of the content of her protected political speech.  Upon information and belief, Chief Judge Morrison did not believe that Ms. McLin's political post had caused any actual disruption of the work environment.  Upon information and belief, Chief Judge Morrison knew that terminating Ms. McLin because of her political speech was illegal under the First Amendment of the United States Constitution.  By terminating Ms. McLin's employment because of the content of her political post,** Chief Judge Morrison violated her right to engage in protected political speech under the First Amendment.  At the time of Ms. McLin's termination, that right was clearly established within the United States, the Fifth Circuit, and Louisiana as a

matter of law. Chief Judge Morrison's termination of Ms. McLin's employment because of her political Facebook post was objectively unreasonable as a matter of law. Chief Judge Morrison's termination decision was an administrative act as Ms. McLin's ultimate decision-maker at work, and not a judicial or adjudicatory act. **Upon information and belief, Chief Judge Morrison appreciated all of these facts, but proceeded anyway.**

157.    Accordingly, Chief Judge Morrison is liable, solely in his individual capacity, for all actual and statutory damages suffered by Ms. McLin resulting from unlawful termination, including, but not limited to, back pay, front pay or reinstatement, punitive damages, compensatory damages, non-compensatory damages, mental anguish and loss of enjoyment of life damages, legal costs, pre- judgment and post-judgment interest, Ms. McLin's reasonable attorney's fees and actual costs incurred in this action, and all other appropriate, equitable relief.

### RESERVATION OF AMENDMENT

Ms. McLin reserves the right to amend this complaint as necessary or appropriate during this litigation.

### JURY DEMAND

Ms. McLin demands a trial by jury on all issues and causes of action in this matter.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff Katelynn McLin prays that her complaint be deemed good and sufficient; that it and summons be served upon defendants the Twenty-First Judicial District and Robert H. Morrison, III; and, after due proceedings are had, that judgment be entered in favor of plaintiff and against defendants (1) declaring that defendants did intentionally discriminate against plaintiff based on her race; or alternatively based on her political speech; or alternatively based on her political activities and perceived political affiliations; (2) awarding Ms. McLin all damages

and legal relief, as applicable, with respect to plaintiff's claims under Title VII; 42 U.S.C. § 1981 through Section 1983 (including punitive damages); the First Amendment of the United States Constitution through Section 1983 (including punitive damages); and La. Rev. Stat. Ann. § 23:961; including all available lost back wages, lost front wages or reinstatement, compensatory damages, non-compensatory damages, statutory damages, litigation costs, pre-judgement and post-judgment interest, and Ms. McLin's reasonable attorney's fees incurred in the matter; and (3) awarding Ms. McLin all other legal and equitable relief to which plaintiff may be entitled.

Respectfully submitted:

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz, TA (Bar #32746)
The Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A / Mandeville, LA
70448 Telephone: (504) 275-5149
Facsimile: (504) 910-1704
Email: vogeltanz@gmail.com

*Attorney for Katelynn McLin*

## **LOCAL RULE 5(e) CERTIFICATION**

Pursuant to Local Rule 5(e), no certificate of service is required for this motion because all parties are electronic filers and will receive notice through the court's electronic filing system.

/s/ Kevin S. Vogeltanz

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**KATELYNN MCLIN**

   **Plaintiff,**

  **v.**

**TWENTY-FIRST JUDICIAL DISTRICT and
ROBERT H. MORRISON, III**

   **Defendants.**

**CIVIL NO. 3:21-CV-411-BAJ-RLB**

### DECLARATION OF KATELYNN MCLIN

I, Katelynn McLin, am over the age of 18 years, and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following facts are true and correct to the best of my knowledge and recollection at the time this declaration is made:

1.  I am the named plaintiff in the lawsuit *McLin v. Twenty-First Judicial District et al.,* No. 3:21-CV-411-BAJ-RLB currently pending in the United States District Court for the Middle District of Louisiana.

2.  I authorized my attorney, Kevin S. Vogeltanz, to file the original Complaint and the First Amended, Restated, and Superseding Complaint in this matter.

3.  I verify that, at the time of its filing, each allegation of the First Amended, Restated, and Superseding Complaint was true and correct to the best of my knowledge and recollection.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and recollection.

Executed on this date ___12/8/2021_____

DocuSigned by:

46E9A00087AF4B7...

Katelynn McLin